Willie DOUGLAS, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 98956.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 1, 2013.

Jessica M. Hathaway, St. Louis, MO, for appellant.

Chris Koster, Mary H. Moore, Jefferson City, MO, for respondent.

ROY L. RICHTER, Presiding Judge.

Willie Douglas ("Movant"), appeals from the denial of his Rule 24.035 post-conviction relief motion without an evidentiary hearing. We reverse and remand.

## I. BACKGROUND

On August 16, 2010, Movant appeared before the plea court in the City of St. Louis and pled guilty to a number of criminal charges associated with three different criminal cases (case numbers: 0922–CR03717[1]; 0922–CR02898;[2] and 0922–CR00262[3]). Thereafter, the plea court accepted Movant's pleas associated with all three criminal cases and sentenced Movant to a term of imprisonment totaling thirty

years, as all sentences were to run concurrently.

On January 12, 2011, Movant timely filed his *pro se* Rule 24.035 motion for post-conviction relief, and an amended motion was subsequently filed. In Movant's motion for post-conviction relief, Movant argues the plea court was without a factual basis to accept Movant's pleas on two counts associated with criminal case number 0922–CR03717. Specifically, Movant claims that there was no factual basis as to the count of murder in the second degree, in violation of Section 565.021, RSMo 2000,[4] and the accompanying count of armed criminal action ("ACA"), based upon the commission of the murder in the second-degree, in violation of Section 571.015.

At the plea hearing, during the presentation of the factual basis for the Movant's guilty pleas, the State outlined for the plea court what the State's evidence would be if Movant had proceeded to trial on the two counts now challenged:

> If that case had proceeded to trial or if those counts had proceeded to trial, the State would have proved beyond a reasonable doubt that on or about October 26th, [2008], in the City of St. Louis, State of Missouri, namely in the 2900 block of Hebert, the Defendant acting with Steven Smith, knowingly caused the death of Cortez Johnson by shooting him. The State would also prove as to count three, that the Defendant acting

1. In case number 0922–CR03717, Movant was charged with and pled guilty to the following: one count of murder in the second degree; three counts of assault in the first degree; four counts of armed criminal action; and two counts of an unlawful use of a weapon.

2. In case number 0922–CR02898, Movant was charged with and pled guilty to the following: fifteen counts of robbery in the first

degree; one count of attempted robbery in the first degree; and sixteen counts of armed criminal action.

3. In case number 0922–CR00262, Movant was charged with and pled guilty to tampering with a motor vehicle in the first degree.

4. All statutory references are to RSMo 2000, unless otherwise specified.

with Steven Smith, committed the felony of murder in the second degree as charged in count one and the Defendant acting with Mr. Smith committed that felony of murder in the second degree, by, with and through the knowing use, assistance and aid of a deadly weapon ... And as a result of that result, Cortez Johnson suffered injury or death. Judge, the State's evidence in this case would show that Mr. Douglas was picked up by Steven Smith. Mr. Douglas took over the role of driving the Impala. Steven Smith was the passenger in the Impala. Mr. Douglas, the Defendant, was aware that Mr. Smith was armed with a handgun. That he was aware of what they were doing in the street Lexicon, riding for Murder J. Mr. Smith and possibly, Mr. Douglas had lost a friend by the name of Orlando Jones. Mr. Jones, better known on the street as Murder J was killed December 28th, [2004]. Steven Smith and Mr. Douglas went to gain some semblance of revenge for the lost [sic]. They drove into the known gang areas. The murder occurred in the 200 and 70 Sullivan Mob Set or Beam Street Set where the Defendant drove the car into the gang area. Steven Smith produced a handgun and fired at some point. Standing on a porch, one of those bullets that Mr. Smith fired from the car that Mr. Douglas was operating, struck a Cortez Johnson and killed—and Cortez Johnson's death resulted from being hit with that bullet.

After the State presented its evidence for the guilty pleas, the plea court inquired of Movant:

Court: Mr. Douglas, did you hear the evidence that [the State] described to us about the things that caused the death of Cortez Johnson on October 26, [2008]?

Movant: Yes, sir.

Court: Do you remember those things that [the State] has described to us?

Movant: No, sir.

As a result of Movant's initial denial of the facts as presented by the State, the plea court proceeded to question Movant on the facts and individual elements of the charges.

Court: Going back to October 26th of [2008] were you friends with Steven Smith?

Movant: Yes, sir.

Court: At this time did Mr. Smith come by wherever you were at some point that—that late morning and pick you up in his car or in a car?

Movant: Yes, sir.

\* \* \*

Court: Did Mr. Smith have you take over the driving of that [2007], Chevrolet?

Movant: Yes, sir.

Court: So now you and Mr. Smith are in the car. You're driving. Is Mr. Smith in the front passenger seat or in the rear?

Movant: In the front passenger seat.

Court: Okay. Does Mr. Smith have a handgun?

Movant: When I got in the car, he didn't have [a gun]. When I got in the car, he didn't have it out. So when we go to riding; when we made it to that area, that's when he pulled it out.

Court: All right. So at first, you don't see a handgun but as the two of you are riding around—

Movant: Yes.

Court:—you're driving; he's in the passenger seat, at some point, he pulls a handgun out?

Movant: Yes, sir.

Court: Okay. And do you drive into the [area] [w]ith Mr. Smith still in the passenger seat?

Movant: Yes, sir.

Court: Okay. And you saw him fire the handgun at the people on the porch?

Movant: When I was driving, I stopped and then he started firing. I looked over and I drove off.

Court: All right. And when he fired that gun, one of the bullets from his gun hit a person named Cortez Johnson. Did that turn out to be the case?

Movant: Yes, sir.

\* \* \*

Court: And he [Cortez Johnson] died?

Movant: Yes, sir.

\* \* \*

Court: All right. So we've got Mr. Cortez Johnson dying from a bullet shot by Mr. Smith that came from a gun that Mr. Smith was firing while he was in the [2007] Chevrolet that you were driving?

Movant: Yes, sir.

At the point, the plea court halted questioning of Movant and inquired as to whether there were any additional facts that must be admitted by Movant:

Court: All right, anything else [Prosecutor] about [these counts] that I need to review with Mr. Douglas?

Prosecutor: Your Honor, I believe that the Defendant—that for the factual basis, we need to establish that the Defendant had knowledge that Mr. Smith was going to be firing a weapon out of that vehicle.

In an attempt to procure admissions by Movant of his knowledge of the purpose of Movant's driving of the vehicle, the plea court resumed questioning Movant.

Court: Mr. Douglas, let me go back a little bit. Did you know a man named Orlando Jones?

Movant: Yes, sir.

Court: Okay. And some time before October 26th, 2008, had Mr. Jones been killed?

Movant: Yes, sir.

Court: And did Mr. Smith know Mr. Jones?

Movant: Yes, sir.

\* \* \*

Court: Okay, Now, at this point [on October 26th, 2008], when you're driving around with Mr. Smith, the purpose of that driving around is to get back at people for killing Mr. Jones?

Movant: No, sir.

Court: What was the purpose of your driving around?

Movant: He came and picked me up. Told me to ride with him. He asked me to drive so I started driving. He was just telling me which way to go. I didn't know what he—what he was gone do [sic] or nothing until it happened.

Court: At some point as you're driving, Mr. Smith pulls out a handgun?

Movant: Yes, sir.

Court: And so you see that he's got a handgun?

Movant: Yes, sir.

Court: So at that point, do you put two and two together and figure out, we must be looking for something?

Movant: Yes, sir.

Court: And at that point, you're—you knew Mr. Jones and you're thinking there needs to be some revenge for Mr. Jones being killed?

Movant: No, sir.

\* \* \*

Court: All right. So you're driving the car, Mr. Smith is sitting next to you, he has a gun out; he's telling you where to

drive. And you figure out that the purpose of this is to find somebody that Mr. Smith is gonna shoot?

Movant: Yes, sir.

Court: Okay, so you know that that's what's going on?

Movant: Yes, sir.

Court: Okay. And you pull up to a stop sign and Mr. Smith does start shooting?

Movant: Yes, sir.

Court: And he's shooting at a specific group of people who are standing on a porch?

Movant: Yes, sir.

Court: Okay. And you knew that this was what was gonna happen from this riding around?

Movant: Yes, sir.

Court: If you found the right people, Mr. Smith was gonna shoot at them?

Movant: Yes, sir.

Court: Okay. And that's, in fact, what did happen?

Movant: Yes.

Court: All right. And then you pull away?

Movant: Yes, sir.

Court: Cause you don't want any of those people to catch you or Mr. Smith, after Mr. Smith is [sic] just shot at them.

Movant: Yes, sir.

The motion court denied Movant's Rule 24.035 motion for post-conviction relief, without an evidentiary hearing, finding that a factual basis for the pleas was established and Movant understand the nature of the charges against him.

This appeal follows.

## II. DISCUSSION

In his sole point relied on, Movant argues the motion court clearly erred in denying his Rule 24.035 motion for post-conviction relief because the factual basis was insufficient to support his guilty pleas as an accomplice of murder in the second degree, and the accompanying ACA, thereby violating his rights afforded to him under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution. Movant maintains the plea court's acceptance of Movant's pleas without a factual basis rendered his guilty pleas involuntary, unknowing, and unintelligent.

### Standard of Review

"Appellate review of the motion court's action on a motion filed under Rule 24.035 is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous." *Wood v. State*, 853 S.W.2d 369, 370 (Mo. App. E.D.1993); *see also* Rule 24.035(k). The motion court's findings and conclusions will be deemed clearly erroneous only if a review of the entire record leaves this Court with a "definite and firm impression that a mistake has been made." *Cobb v. State*, 787 S.W.2d 317, 318 (Mo. App. E.D.1990).

Movant bears the burden of establishing his grounds for relief by a preponderance of the evidence. *See* Rule 24.035(i); *see also Barnes v. State*, 385 S.W.3d 517, 522 (Mo.App. S.D.2012). This burden is a heavy one as the motion court is free to believe or disbelieve any evidence, whether contradicted or undisputed, including the movant's testimony. *Barnes*, 385 S.W.3d at 522. Accordingly, this Court, on appeal, gives deference to the motion court's credibility determinations. *Id.*

### Analysis

Rule 24.02 sets forth the procedure a plea court must follow for pleas in felony

and misdemeanor cases. *Saffold v. State*, 982 S.W.2d 749, 753 (Mo.App. W.D.1998); *see generally* Rule 24.02. Pursuant to Rule 24.02(e), the plea court is prohibited from entering a judgment upon a plea "unless it determines that there is a factual basis for the plea." Rule 24.02(e). This "factual basis requirement" for a guilty plea is mandated "to ensure that the guilty plea was intelligently and voluntarily entered, thereby satisfying due process requirements." *Chipman v. State*, 274 S.W.3d 468, 471–72 (Mo.App. S.D.2008) (quoting *State v. Henry*, 88 S.W.3d 451, 457 (Mo.App. W.D.2002)); *see also Price v. State*, 137 S.W.3d 538, 541 (Mo.App. S.D. 2004) ("Rule 24.02(e) is not constitutionally based; rather, its purpose is to *aid* in the constitutionally required *determination* that a defendant enter his or her plea of guilty intelligently and voluntarily.") (emphasis in original).

■ "A factual basis is established where the information or indictment clearly charges the defendant with all of the elements of the crime, the nature of the charge is explained to the defendant, and the defendant admits guilt." *Fee v. State*, 283 S.W.3d 296, 298 (Mo.App. E.D.2009). The factual basis does not have to be established by the defendant's words or by an admission of the facts as recited by the State, but, rather, may be established on the record as a whole. *Kennell v. State*, 209 S.W.3d 504, 506 (Mo.App. E.D.2006). However, the defendant should express "an awareness of the nature and elements of the charge to which he or she pleads guilty." *DeClue v. State*, 3 S.W.3d 395, 397 (Mo.App. E.D.1999) (quoting *Vann v. State*, 959 S.W.2d 131, 134 (Mo.App. S.D.

1998)). Accordingly, so long as the defendant understands the *nature* of the charge, there is no requirement that every element of a crime to which a defendant pleads guilty be explained. *Wagoner v. State*, 240 S.W.3d 159, 165 (Mo.App. S.D.2007) ("An appellate court's focus is on whether the defendant understood the nature of the charge against him and not on whether a particular ritual was followed or every detail was explained.").

■ Furthermore, the plea itself forms a factual basis for the guilty plea "[i]f the plea of guilty is voluntarily and understandingly made and unequivocal as to the factual requisites necessary to establish each element of an offense." *State v. Shafer*, 969 S.W.2d 719, 734 (Mo. banc 1998). That is, by pleading guilty, a movant "waives all errors except for those affecting the voluntariness or understanding with which the plea was made." *Saffold*, 982 S.W.2d at 753.

■ Here, Movant pled guilty to both murder in the second degree, under accomplice-liability, and the accompanying ACA.[5] It is uncontested that Movant's accomplice, Steven Smith ("Smith") shot and killed the victim, Cortez Johnson, on October 26, 2008. In order for Movant to be convicted as an accomplice to second-degree murder and ACA, the State has the burden to prove beyond a reasonable doubt, that the Movant or Smith knew or was aware this his conduct was causing or practically certain to cause the death of the victim (Cortez Johnson), and if with the purpose of promoting or furthering the commission of murder in the second de-

---

5. We note that Movant has challenged both his pleas as an accomplice to second-degree murder and ACA. Because "armed criminal action, in every case, requires the commission of an underlying felony," our analysis to the sufficiency of the both pleas is performed concurrently. *State ex rel. Westfall v. Ruddy*, 621 S.W.2d 42, 44 (Mo. banc 1981). Thus, since we reverse the second-degree murder plea, the ACA conviction would necessarily fail as well.

gree, the Movant acted with or aided Smith in committing that offense with the use of a dangerous instrument or deadly weapon. *See* Section 562.041; Section 565.021; 571.015.[6]

The dispositive issue is whether Movant's guilty plea established Movant's awareness of the nature of the charges and all of the facts and admissions necessary to prove Movant aided or encouraged Smith with the purpose of committing second-degree murder or Movant acted with the purpose of promoting or furthering Smith's actions in committing the crime of second-degree murder. Movant contends that while he admitted to most of the elements and facts of the charged crimes, the State and plea court failed to establish that, unequivocally, Movant was driving the vehicle "for the purpose" of committing the offense of murder in the second degree. Thus, Movant argues the factual prerequisites necessary to establish accomplice liability for second-degree murder and the accompany ACA charges were lacking because Movant did not admit he was driving the vehicle with the purpose of aiding or furthering Smith in committing

second-degree murder with the use of a dangerous instrument or deadly weapon. We agree with Movant.

■■■■ While an explanation of every element to a defendant is not necessary, the defendant must still understand the nature of the charges against him. *Brown v. State*, 45 S.W.3d 506, 511 (Mo.App. W.D. 2001). "It is preferable to do more than to do less when establishing a factual basis for a plea." *Daniels v. State*, 70 S.W.3d 457, 464 (Mo.App. W.D.2002). The record does not persuade this Court that Movant *unequivocally* understood the nature of the charges against him, nor did the plea court meet the minimum requirements for establishing the pleas. Movant's denial that he knew he was driving Smith for the purpose of Smith shooting Cortez Johnson, coupled with the plea court's vague line of questioning of Movant, does not establish a factual basis for Movant's guilty pleas as an accomplice to second-degree murder and the accompany ACA charges. *See, e.g., Brown*, 45 S.W.3d at 508–12; *Franklin v. State*, 989 S.W.2d 678, 679–80 (Mo.

6. If Movant had elected to proceed to trial, the jury would have been instructed in a manner similar to the following:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count X, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 26, 2008, in the City of Saint Louis, State of Missouri, Steven Smith ("Smith") caused the death of Cortez Johnson ("Johnson") by shooting him, and

Second, either

(1) Smith knew (or was aware) that his conduct was causing (or practically certain to cause) the death of Johnson, or

(2) That it was Smith's purpose to cause the death of Johnson, or

(3) That it was Smith's purpose to cause serious physical injury to (or cause the death of) Johnson,

then you are instructed that the offense of the murder in the second degree of Cortez Johnson has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of murder in the second degree, the Defendant (Douglas) acted together with, or aided or encouraged Smith in committing that offense,

then you will find the Defendant (Douglas) guilty of murder in the second degree.

*See* MAI–CR 3d 304.04; 314.04

App. E.D.1999). Movant's guilty pleas were not made intelligently or voluntarily.

 As previously stated, to hold one liable for the acts of another, that individual must have acted with or aided before or during the crime with the purpose of promoting that offense. *See* Section 562.041.1(2).

> Aiders and abetters incur liability by any form of affirmative advancement of the enterprise. One who before or during the commission of a crime, intentionally and knowingly aids or encourages the commission of a crime is guilty of that offense. Among other things, circumstances indicative of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during and after the commission of the crime. Proof of any form of participation by the defendant is enough to support a conviction and participation can be inferred from the circumstances.

*State v. Brown*, 924 S.W.2d 3, 5 (Mo.App. E.D.1996) (internal citations omitted).

Although the plea court established Movant was present during the crime, fled from the scene of the crime, and briefly associated with Smith before the commission of the crime, the plea court's line of questioning failed to adduce an admission by Movant that he drove the vehicle knowing that the purpose of driving the vehicle was for Smith to commit the crime. *See, e.g., Carmons v. State*, 26 S.W.3d 382, 384–85 (Mo.App. W.D.2000) (plea failed to establish defendant understood the nature of the charges). In fact, Movant, in his own words, denied such a purpose. The plea court attempted to correct Movant's denial, but the line of questioning was wrought with confusion and does not demonstrate "a layman would understand what acts he was charged with committing, and the commission of which constituted the crimes charged." *Hoskin v. State*, 863 S.W.2d 637, 639 (Mo.App. E.D.1993).

The cause of justice and the integrity of our procedures are best served by exercising this Court's powers of review to grant relief in this case in which there are many flaws in the plea. *Wilson v. State*, 813 S.W.2d 833, 849 (Mo. banc 1991) (Blackmar, J., dissenting). Movant seeks relief from this court to set aside and vacate his pleas on the counts of second-degree murder and the accompanying armed criminal action and proceed to trial on those counts. We grant such relief and find the plea court clearly erred in accepting Movant's pleas as it relates to second-degree murder and the accompanying ACA, in violation of Rule 24.02(e), but note Movant now runs the risk, if he is found guilty at trial for the charges of second-degree murder and ACA, of having his sentences run consecutively. Point granted.

## III. CONCLUSION

We reverse the motion court's findings, vacate and set aside Movant's pleas and sentence as to second-degree murder and the accompanying armed criminal action charges, and remand this case to the trial court for further proceedings consistent with this opinion. In all other respects, the judgment of the plea court is affirmed.

CLIFFORD H. AHRENS, J., and GLENN A. NORTON, J., concur.