STATE of Missouri, Respondent,

v.

Matthew R. STONE, Appellant.

WD 79949

Missouri Court of Appeals, Western District.

OPINION FILED: November 21, 2017

Dora Fichter, Jefferson City, MO, for respondent.

Christian. Lehmbert, Columbia, MO, for appellant.

Before Division Two: Anthony Rex Gabbert, Presiding Judge, Thomas H. Newton, Judge and Gary D. Witt, Judge

Gary D. Witt, Judge

Matthew Stone ("Stone") appeals the denial of his motions for judgment of acquittal from the Circuit Court of Lafayette County, Missouri. He. was found guilty, following a jury trial, of one count of burglary in the second degree, section 569.170 [1], and one count of property damage in the first degree, section 569.100 on a theory of accomplice liability. On appeal, Stone contends that the trial court erred in overruling his motions for judgment of acquittal because the State's evidence was insufficient to support Stone knowingly aided or encouraged Henry Hood ("Hood") in committing the offenses.

We affirm.

## Factual Background [2]

Stone was charged with one count of burglary in the second degree and one

---

1. All statutory references are to RSMo 2000 cumulative as supplemented through December 31, 2016, unless otherwise noted.

2. We consider the testimony in a light most favorable to the verdict and contrary evidence and inferences are disregarded. *State v. Rutter*, 93 S.W.3d 714, 720 (Mo. banc 2002).

count of property damage in the first degree. These charges arose out of a burglary of a residential house located at 6670 WW Highway in Lafayette County, Missouri, during the evening of March 12, 2015.

Around 8:00 a.m. on March 12, 2015, Tiffany Gale ("Gale"), an employee of Swim Things, winterized a pool at 6670 Highway WW in Lafayette County. She hung a door hanger on the front door indicating that the pool had been serviced. There was no damage to the house when Gale was there. Later that day, Hood called Stone to see if he wanted to make some money. Stone said yes, and they drove to the house in Lafayette County. They backed into the driveway. Hood told Stone he was going to go into the house to get some money from the people inside. Hood got out of the car, kicked in the side door to the garage, forcing it open and went inside.

Deborah Allen ("Allen"), a neighbor was coming home and saw the car in the driveway. She stopped because she knew the owners were not home. She began to try and call the owners from her cell phone. Stone drove the car to where Allen was waiting in her car and stopped to talk with her. Stone said he was from Swim Things, had been at the residence earlier and needed something from the garage that he forgot. As Stone drove away he turned onto the road toward its dead end. As he turned onto the road, Hood came out of the house and ran after the car. After seeing this take place, Allen called the police.

When the police arrived at the residence, they found the side garage door was forced open, and there was damage to the interior residence door-indicating that it had been kicked in. On the second floor of the home, there was a drawer taken out of a dresser. James Curtis ("Curtis"), the owner of the home, did not give permission for Stone or Hood to enter his house. Curtis later testified the repair cost were $2,694.

A short time later, Ted Dickhout observed two males walking across interstate 70. They appeared like they were "up to no good" so he called 911. Police were dispatched to that location. The same car that Allen observed leaving the home was located in a ditch, where it appeared the driver had attempted to cross from the dead end road onto the highway but the car became stuck. Stone was located nearby sitting on a rock under a bridge. Hood was later located at a nearby gas station. An inventory search of the vehicle revealed the Swim Thing door tag signed by Gale which she had left on the door to the house earlier that day.

The police questioned Stone about the alleged burglary. After initially lying to police, Stone eventually said he did see Hood kick the door into the house and go inside. Stone denied that he saw Hood carry anything from the house to the car. Stone admitted they went to the house to get money. Stone claimed that he had been with Hood and another man the day before driving around and that the other man had a gun. Stone told police that he feared that Hood had taken out a contract to kill Stone (put a "hit out" on him) and that he feared for his life. When asked why he went with Hood in the car the next day, if he was in fear for his life Stone responded that he wanted to see how it played out.

In June of 2015, the case was tried to a jury. He was found guilty on both counts: burglary in the second degree and property damage in the first degree. Stone was sentenced to consecutive sentences of seven years imprisonment for burglary and two years' imprisonment for property damages for a total sentence of nine years. Stone now appeals.

Stone raises two points on appeal both challenging the sufficiency of the evidence that he knowingly aided or encouraged Hood in the commission of the offenses. Point I challenges the offense of Burglary and Point II challenges the convictions for Property Damage. Because the analysis for each point relies on the same evidence we will address the points raised together.

## Standard of Review

When reviewing the sufficiency of evidence supporting a criminal conviction, the Court gives great deference to the trier of fact. Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. In applying this standard, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary.

*State v. Neal*, 328 S.W.3d 374, 377-78 (Mo. App. W.D. 2010) (citing *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009)).

## Analysis

■ Stone argues that the trial court erred in overruling his motions for judgment of acquittal at the close of all the evidence and entering a judgment of conviction because there was insufficient evidence presented that Stone knowingly aided or encouraged Hood in committing the offenses. Stone alleges that the only evidence presented at trial to support his involvement in the offenses constituted mere speculation.

Burglary in the second degree, as relevant to this matter, is committed "when [someone] [ ] knowingly enters unlawfully [ ] a building or inhabitable structure for the purpose of committing a crime therein." Section 569.170. Property damage in the first degree, as relevant to this matter, is committed if "[someone] [ ] [k]nowingly damages property of another...." Section 569.100.[3]

■ Under the theory of accomplice liability, "[a] person with the required culpable mental state is guilty of an offense if it is committed ... by the conduct of another person for which he is criminally responsible...." Section 562.036. "A person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." Section 562.041.1(2). "Any evidence, either direct or circumstantial, that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." *State v. Barker*, 442 S.W.3d 165, 169 (Mo. App. W.D. 2014). "Circumstances that may support the inference of an accomplice's affirmative participation include presence at the crime scene; flight therefrom; association or companionship with others involved before, during, and after the crime; conduct before and after the offense; knowledge; motive; and a defendant's attempt to cover up his involvement." *Id.* (internal quotations omitted).

The evidence was sufficient for a reasonable juror to have found Stone acted together with Hood in committing burglary and property damage. The day of the crimes, Stone went with Hood to get some money at a house. They backed the car into the driveway, inferring they may need a quick escape. Hood told Stone he was

---

**3.** The value or cost of repair of the property damage pursuant to the statute is not an issue on this appeal.

going into the house to get some money. Stone watched Hood kick in the side garage door of the residence. When Stone saw Allen stopped near the driveway, he drove the car away without waiting for Hood. Stone knew Swim Things had been at the house prior to them that day based on the conversation he had with Allen while Hood was still in the house. Stone tried to cover up the crimes and lied to Allen about working at Swim Things and stated he needed access to the garage to recover items left there earlier in the day. Stone drove away in the car when Allen attempted to call the police and, in his haste to get away, turned down the street toward a dead end. Hood ran after Stone and attempted to get in the car. Stone tried to drive the car across the ditch to get to the highway rather than turn around and drive back past the house. The car was found stuck in a ditch and Stone abandoned the car and left the scene rather than seeking help in getting the car out of the ditch. A Swim Things tag from the residence where the crimes occurred was in the car he abandoned. Stone was hiding under a bridge when an officer later found him. During the police interview, Stone lied and tried to cover up the offense but later confirmed he observed Hood break into the residence and cause the property damage.

Based on all of the above facts and circumstances, a reasonable juror could have found Stone guilty of knowingly aiding and encouraging Hood in the commission of both offenses.

## Conclusion

The judgment and sentence of the trial court is affirmed.

All concur