STATE of Missouri, Respondent,

v.

Anesia SMITH, Appellant.

No. WD 61263.

Missouri Court of Appeals,
Western District.

June 10, 2003.

Jon M. Krebbs, Liberty, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Patrick T. Morgan, Asst. Attorney General, Jefferson City, for Respondent.

Before RONALD R. HOLLIGER, P.J., PAUL M. SPINDEN, and JAMES M. SMART, JR., JJ.

PER CURIAM.

Anesia Smith appeals her conviction for robbery in the first degree for which she was sentenced to ten years of imprisonment, with the execution of sentence suspended and the defendant placed on probation for five years.

## Statement of Facts

Anesia Smith was tried before a Clay County jury on February 4, 2002, on charges of robbery in the first degree, § 569.020, RSMo 2000, and armed criminal action, § 571.015, RSMo 2000. Viewed in the light most favorable to the jury's verdict, the evidence at trial showed the following: In July of 2000, Anesia Smith was romantically involved with Steven Foster. Foster resided with his aunt, Mary Swetman. Both Smith and Foster lived in St. Louis, Missouri. On the evening of Friday, July 7, 2000, Steven Foster asked to borrow a green Ford Escort belonging to his aunt, Mary Swetman, with whom he resided. He told his aunt he needed the car to drive to Kansas City to withdraw money from his bank account. Anesia Smith and another woman were with him at the time he borrowed the car. Foster drove the car to Liberty, Missouri, and robbed a Hy–Vee store.

The robbery took place in the early morning hours of Saturday, July 8, 2000. Hy–Vee employee Johnna Klucking was tallying the daily receipts in the upstairs office at the store in Liberty around 4:00 a.m. A man entered the office, put a gun to Ms. Klucking's head, and told her to put all the money in a backpack that he handed her. Ms. Klucking complied. After ordering her to the floor, the robber ran from the office with approximately $32,000.00. As he fled the scene, Ms. Klucking recognized the robber as Steven Foster, a former employee at the store. Ms. Klucking activated a silent alarm and followed Foster down the stairs leading from the office. Two other store employees, Farney Smith and Megann Landsdale, also saw Foster run out the front door.

At trial, Johnna Klucking testified that she chased the robber out of the store and saw him get into a waiting car. She saw at least one other person in the car, but Klucking could not identify anyone in the car other than Foster. Klucking testified that there may have been a third person in the car, but she "couldn't swear to that." Farney Smith testified that she definitely saw two other people in the car and thought one might be a female because it looked like "hair down to here." She could not identify anyone in the car other than Foster. Megann Landsdale testified that she saw the robber jump into the backseat of the car and stated that there were two females in the waiting car. She knew the passenger was an African–American female but did not know whether the driver was African–American. She could not say Anesia Smith (an African–American) was there that day. The witnesses were able to see the license plate number, which they reported to police.

Sometime later that morning or early in the afternoon, approximately seven to eleven hours after the robbery in Liberty, Foster, Anesia Smith, and another woman drove to a used car dealership in St. Louis (some four or five hours away from Liberty, the site of the robbery) where Ms. Smith purchased a Dodge Intrepid. She paid $6,825.00 in cash as the total purchase price of the car, and the car was titled solely in her name. A dealership employee testified that the appellant and Foster negotiated the transaction while the other woman waited in the Ford Escort. He

recalled that they were there sometime between 11:00 a.m. and 3:00 p.m. The employee stated that Foster pulled from his pocket "[s]tacks of mostly twenties, fifties, some hundreds, wrapped in rubber bands." Anesia Smith was driving the new car when they left the dealership.

When Foster returned Ms. Swetman's Escort to her later that same Saturday, he asked her and her boyfriend, Charles Wiley, to come out and see his new car. Ms. Swetman testified at trial that there were two women in the car, but she did not recognize either one. In her earlier written statement to the police, she stated that the two women were Anesia and a friend of Anesia's named April. Mr. Wiley testified that he saw Anesia Smith sitting in the driver's seat of the Intrepid, along with a friend of hers, who he believed may have been named April. Mr. Wiley also stated in his earlier written statement that the other woman in the car was April. Later, Ms. Swetman and Mr. Wiley, checking Foster's bedroom in Ms. Swetman's house, found bank bags in Foster's bedroom. Ms. Swetman took the bank bags to her sister's house. They looked in together and found "money orders, checks, telephone bills, and utility bills" in the bags. Subsequently, they turned the bags over to the Liberty Police Department.

A few days later, on July 13th, Foster was stopped on a traffic violation in Overland Park, Kansas. He was driving the new Intrepid titled in the name of Anesia Smith. Approximately $5,000.00 in cash and more bank bags from the robbery were found in the trunk of the car. Foster told police the car belonged to Smith. When Smith was contacted about the car, she confirmed it was her car. Acknowledging the car was not registered, she said she paid a total of $4,000.00 for the car, paying $2,000.00 in cash and financing the balance at $150.00 per month.

When police detectives contacted Mary Swetman, the owner of the car used in the robbery, and Charles Wiley about the car, Swetman and Wiley told them that Foster had borrowed the car to drive to Kansas City. They also said he was accompanied by Anesia Smith and a friend of Smith both when the car was borrowed and later returned.

Foster eventually pleaded guilty to the robbery. Anesia Smith was charged with first degree robbery under a theory of accomplice liability as a participant in the offense. Ms. Smith presented an alibi at trial, stating she was with Joseph Anderson, who also testified. Steven Foster testified, admitting the robbery, but stating that Anesia Smith had nothing to do with the robbery. He identified two other people as involved with the robbery. Anesia Smith testified that she purchased the Dodge Intrepid with cash she had saved after years of working.

The jury found the appellant guilty of robbery in the first degree and of armed criminal action. The trial court granted the appellant's request for a new trial on the armed criminal action charge because a typographical error in the verdict form could have confused the jury. Anesia Smith was sentenced in accordance with the jury's recommendation to ten years imprisonment in the Missouri Department of Corrections. The court suspended execution of sentence, sentenced her to five years probation, and ordered her to pay $26,810.95 in restitution.

On appeal, the appellant challenges the sufficiency of the evidence to convict her of robbery in the first degree.

## Standard of Review

In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of

whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). This court is charged with the responsibility of determining whether all of the evidence, direct and circumstantial, is sufficient to provide any rational juror with proof beyond a reasonable doubt as to each element of the crime. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). In making this determination, the court accepts as true all evidence that is favorable to the State, including all favorable inferences to be drawn therefrom, and disregards all evidence and inferences to the contrary. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998). We seek to ensure that the finding of guilt is not based on speculation. See *Grim*, 854 S.W.2d at 414. Where there are permissible inferences that could reasonably establish guilt beyond a reasonable doubt, this court does not sit as a "super juror" with veto powers. See *Id.*

## Point On Appeal

The appellant asserts that the trial court erred in denying her motion for judgment of acquittal at the close of all the evidence and her motion for judgment of acquittal after discharge of the jury in that, as a matter of law, there was insufficient evidence to prove that she intentionally aided or encouraged the commission of a robbery and insufficient evidence from which a jury could make reasonable inferences as to her involvement in the robbery.

## Accomplice Liability

In determining whether the evidence is sufficient to support the jury's verdict, we must consider each of the elements of the crime. *State v. Thomas*, 75 S.W.3d 788, 790 (Mo.App.2002). The State, in order to convict, is required to prove beyond a reasonable doubt, each and every element of the crime charged. *State v. May*, 71 S.W.3d 177, 183 (Mo.App.2002). The evidence need not show, however, that the defendant personally committed every element of the offense. *Id.*; see also *State v. Sensabaugh*, 9 S.W.3d 677, 679 (Mo.App. 1999). To convict Anesia Smith of robbery in the first degree under a theory of accomplice liability, the State must prove the commission of the elements of the crime charged by a principal with "affirmative participation" by Anesia to aid the principal in the commission of the crime. *Id.* at 184. Smith was charged with first-degree robbery under Section 569.020.1, which states:

A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or instrument.

The appellant admits that the State proved the necessary elements of robbery in the first degree as to the principal, Steven Foster. The State, however, had to prove these additional elements, as set forth in Instruction 6:

Fifth, that Anesia Smith was a participant with Steven Foster in the commission of the offense.

Sixth, that with the purpose of promoting or furthering the commission of the robbery in the first degree, the defendant acted together with or aided Steven Foster in committing that offense.

Accomplice liability is based on the premise that all persons who act in concert to commit a crime are equally guilty. *May,* 71 S.W.3d at 183. Section 562.036 provides that a person with the required culpable mental state may be held criminally liable for an offense committed by the conduct of another person for which he is "criminally responsible." A person is criminally responsible for the conduct of another when:

> [e]ither *before or during* the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

Section 562.041.1(2) (emphasis added). A person who acts with another with a common intent and purpose in the commission of a crime is guilty even if he merely "aids and abets" the crime. *State v. Bradshaw,* 26 S.W.3d 461, 469 (Mo.App.2000). To make a submissible case of aiding and abetting, the evidence must show that the defendant associated himself or herself with the venture or participated in the crime in some manner. *Id.*

### Appellant's Argument

Anesia Smith argues that there was insufficient evidence to establish beyond a reasonable doubt that she in any way associated herself with or participated in the robbery of the Hy-Vee store in Liberty, Missouri, or that she in any way aided Steven Foster in robbing the store. The appellant points out that there was no evidence that she was present at the scene of the robbery or that she personally participated in the robbery. She contends that, at most, the evidence only showed that she had the *opportunity* to aid Foster in the commission of the crime.

Evidence that an accused had an *opportunity* to aid and encourage another in the commission of a crime merely raises a suspicion of guilt and is insufficient to sustain a conviction. *State v. Poor,* 533 S.W.2d 245, 248 (Mo.App.1976); see also *State v. Fowler,* 558 S.W.2d 366, 368 (Mo.App.1977). "[M]ere suspicion, however strong, will not take the place of evidence when life or liberty is at stake." *State v. Coons,* 743 S.W.2d 112, 114 (Mo. App.1988) (citing *State v. Biddle,* 599 S.W.2d 182, 192 (Mo. banc 1980)). A verdict based upon suspicion will not be permitted to stand. *State v. Franco–Amador,* 83 S.W.3d 555, 559 (Mo.App.2002).

### State's Response

The State argues in response that, even though no one identified the appellant as being at the scene of the crime and no witness at trial identified her as a participant, this does not mean that the evidence at trial was insufficient to convict her of being a participant. Any evidence, either direct or circumstantial, that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction. *May,* 71 S.W.3d at 183; see also *Poor,* 533 S.W.2d at 248. The requirement of affirmative participation may be satisfied by inference and the evidence need not directly place the appellant in the act of committing the crime for which she is charged. *Coons,* 743 S.W.2d at 114.

In similar cases, courts have found that the following circumstances may support the inference of affirmative participation by an accomplice: presence at the crime scene; flight therefrom; association or companionship with others involved before, during, and after the crime; conduct before and after the offense; knowledge; motive; and a defendant's attempt to cover up his involvement. See

*State v. Carter,* 849 S.W.2d 624, 627 (Mo. App.1993); *State v. Lager,* 744 S.W.2d 453, 456 (Mo.App.1987); *Coons,* 743 S.W.2d at 114–15; and *State v. Brown,* 924 S.W.2d 3, 5 (Mo.App.1996).

According to the State, the jury's verdict in this case is supported by the inferences that can be drawn from the following: (1) Before the robbery, Smith wanted to buy a car and threatened to break up with Foster if he did not get some money; (2) Smith was with Foster when he left the Swetman house on Friday evening; (3) In the early morning hours of Saturday, July 8th, Foster and two women (at least one an African–American woman) fled the robbery scene together in the borrowed Ford Escort; (4) Later on Saturday, Foster, Smith, and another woman appeared together in the borrowed Ford Escort at a St. Louis car dealership; (5) Foster, Smith, and another woman returned the borrowed Ford Escort to Ms. Swetman a few hours later on Saturday afternoon; (6) While at the dealership, Smith purchased a car for $6,825.00 in cash; (7) The cash she used to buy the car came at least partly from Foster's stack of bills—"twenties and fifties"—bound in rubber bands; (8) Bank bags and cash from the robbery were found in the trunk of the appellant's car. This evidence, the State concludes, is more than sufficient to infer that the appellant encouraged Foster to get some money, drove the getaway car in the robbery, and used the proceeds from that robbery to purchase her new car.

## Analysis

The evidence that Smith allegedly told Foster she was going to break up

with him if he did not get some money came from an out-of court written statement provided to police by Foster's aunt, Mary Swetman. The evidence that Smith left with Foster and another woman on Friday night in the borrowed car also came from prior written statements by Ms. Swetman and Mr. Wiley. Pursuant to section 491.074, RSMo 2000,[1] these statements were introduced as substantive evidence at trial when Ms. Swetman and Mr. Wiley refuted portions of their statements during the State's questioning of them. Under the 2000 amendment to the statute, which reversed prior law, the statements were properly considered by the jury as substantive evidence. The State also presented the testimony of the police detective who interviewed them and took their statements, in an effort to show how implausible it was that the prior statements were false. A reasonable juror would have believed the out-of-court statements of the witnesses over the in-court repudiation of those statements. The in-court testimony of both witnesses contained contradictions and inconsistencies. The jury could have reasonably inferred (1) that Anesia Smith's statement was meant to encourage Foster to commit the robbery, especially when considered in conjunction with the other incriminating evidence against her, and (2) that since Smith and a friend of hers left the Swetman house with Foster on Friday night in the Escort, Smith and her friend were the women in the get-away car at the robbery scene.

Additional circumstantial evidence which tends to show that Anesia Smith was involved in the robbery is: (1) two women were in the get-away car with Foster; (2)

---

1. Section 491.074, RSMo 2000, states:
    Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial *of a criminal offense* shall be received

as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement. (Emphasis added.)

later that same day after the robbery, albeit 250 miles away from the site of the robbery, she, Foster, and another woman were seen together in the car used in the robbery, both at the dealership and when the Escort was returned; and (3) the fact that Smith used $6,825.00 in cash (cash produced mostly by Foster from a stack of bills bound in rubber bands) to purchase a used car in St. Louis that day. The jury could have inferred from these facts that Smith was in the getaway car and that she used the proceeds from that robbery to purchase her new car.

These facts raise an inference that Smith was guilty of participating in the robbery. Even if the prosecution's case, standing alone, was not convincing to the jury, Smith added to the suspicion by her implausible testimony. She said she had saved up the money to buy the car. She and Foster said she had kept the money, some of it in coins, in her closet. She said she had a checking and savings account, but nevertheless kept $6,800.00 in her closet. The poor credibility of Smith's testimony as to where she got the money for the car and the poor credibility of her other defense witnesses at trial added support to the inference of guilt. Defense witnesses Joseph Anderson and Steven Foster gave extremely conflicting and contradictory testimony. The State's reluctant witnesses, Ms. Swetman and Mr. Wiley, were transparently attempting to assist Smith with their trial testimony and to back away from their previously signed statements. They contradicted themselves repeatedly and denied the truth of key statements in their written, signed statements. They gave no good explanation for the fact that they signed written statements so different from their in-court testimony. The evidence created an overall impression of a concerted and transparent effort to cover up the fact that Ms. Smith was involved in the robbery.

An attempt by a defendant to cover up his or her involvement is a factor that may, in conjunction with other evidence, support the inference of affirmative participation by an accomplice. See *Brown,* 924 S.W.2d at 5. See also *State v. Hibbert,* 14 S.W.3d 249, 253 (Mo.App.2000) ("A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or accused's role therein.").

Had Smith not presented a defense, she would have had a stronger argument that the evidence was insufficient. But the entire defense case could reasonably have been viewed as so lacking in credibility as to have strongly supported her participation in the crime. Also, had section 491.074 not changed the law so as to allow the prior statements of Swetman and Wiley to be considered as substantive evidence, the case might well have been in a different posture before this court because it would not have been shown that Anesia Smith and her friend were with Foster before the robbery when he borrowed the car from Swetman. The evidence that Smith was with Foster before the robbery as well as after substantially strengthened the permissible inference that she and her friend were the women with Foster at the time of the robbery.

A reasonable juror could have perceived Smith's overall defense as a dishonest and bumbling attempt by the defendant to cover up her involvement. This appearance of a cover up along with the other facts creating an inference of involvement provided, under *State v. Grim,* 854 S.W.2d 411, 415, sufficient evidence from which a reasonable juror could conclude beyond a reasonable doubt that Smith was "a participant with Steven Foster in the commis-

sion of the offense," and that she, "with the purpose of promoting or furthering the commission of the offense," acted together with or aided Steven Foster in committing the offense.

## Conclusion

For the foregoing reasons the judgment is affirmed.