Karen King Mitchell, Judge
The State appeals from a judgment granting Defendant Jaspera Rainey's motion for judgment of acquittal notwithstanding the jury's verdict after the jury found Rainey guilty of third-degree assault for the death of her almost-two-year-old daughter (Victim). The State argues that the record contained sufficient evidence to support the jury's verdict finding Rainey guilty of third-degree assault, as an accomplice, in that she or her boyfriend, Patrick Middlebrook, recklessly created a grave risk of death or serious physical injury to Victim by slamming, hitting, or kicking her. Because the evidence is sufficient to support the jury's verdict of guilt beyond a reasonable doubt on an accomplice liability theory, we reverse the trial court's grant of Rainey's motion for judgment of acquittal and remand the case to the trial court for determination of the legal claims in Rainey's motion for new trial.
Background[1]
The State charged Rainey with one count of the class A felony of child abuse in violation of § 568.060.[2] The State alleged that Rainey had recklessly caused Victim to suffer serious physical injury resulting in her death. Following trial, the jury found Rainey guilty of the lesser-included offense of assault in the third *919 degree on a theory of accomplice liability. At the sentencing hearing, the trial court granted Rainey's Motion for Judgment of Acquittal Notwithstanding the Verdict of the Jury.
The evidence adduced at trial favorable to the jury's verdict was as follows. On August 16, 2014, Rainey was living in an apartment with three of her children (including Victim), Middlebrook, and his child. Middlebrook remained at home with Rainey's three children that day while Rainey ran errands. At 11:58 a.m., Rainey left the apartment for about half an hour to do laundry at her father's house roughly six blocks away. While there, Rainey told her father that Victim had some rash or bruises that looked like "little hickey marks on her face." Rainey said that she thought Victim might have "purpura"[3] and that Rainey planned to take Victim to the doctor.
When Rainey returned to her apartment at 12:33 p.m., she tried to feed Victim lunch, but Victim would not eat. Rainey then put Victim down for a nap about 1:20 p.m. At 1:32 p.m., Rainey left the apartment to finish the laundry; she returned to the apartment at 3:24 p.m. to get her EBT card and left again at 3:25 p.m. because she was meeting Victim's biological father's daughter, Cyile Bernard, at Walmart. Rainey and Bernard shopped at Walmart for roughly 20 minutes. During that time, Rainey told Bernard that Victim was not feeling well and had some red spots on her head. After leaving Walmart, Rainey returned to her father's house to finish the laundry. Her movements on August 16, 2014, were confirmed by the security cameras at her apartment complex and at Walmart.
Around 4:15 p.m. that day, Rainey received a telephone call from Middlebrook telling her that Victim was not breathing; Rainey did not ask Middlebrook what had happened but, instead, returned to the apartment. Middlebrook then called 911, and police officers and EMS responded to the call for an unresponsive two-year-old child. EMS noticed that there was lividity in Victim's back, rigor mortis in her jaw, and cyanosis in her fingertips.[4] Victim had fixed and dilated pupils, indicating a neurological injury, and she had no pulse. EMS noted bruising on Victim's arms, forehead, and chin; a cut on her nose; and blood around her nostrils and lips. EMS declared Victim dead.
At the scene, Rainey told officers that she sometimes left the children alone with Middlebrook but tried to do so only when the children were sleeping so Middlebrook would not be overwhelmed. Rainey said that she had tried to feed Victim that morning, but Victim had not been hungry; Middlebrook fed the children in the afternoon, and Victim ate a few bites of pizza rolls then. Officers noticed what looked like regurgitated pizza rolls near Victim's bed; they smelled like vomit. Rainey also told officers that, when she returned to the apartment briefly to get her EBT card, she had checked in on Victim, who was sleeping and appeared to be breathing. When officers asked Rainey who Victim's *920 biological father was, Rainey hesitated before telling them it was Brian Blackmon; she then said, "[h]e would be so mad at me." Rainey cooperated with police at the scene, speaking with one officer for nearly an hour; Rainey also signed a consent to search and agreed to be transported to the hospital to give a blood sample.
The next morning, Rainey went to Bernard's house to tell her that Victim had died and to ask Bernard to accompany Rainey to Blackmon's house. When the women arrived at Blackmon's house, Rainey told Blackmon that Victim had died, and Blackmon collapsed on his porch. Blackmon asked what happened, and Rainey told him she did not know. Rainey then hugged Blackmon and told him, "Don't worry about this. We still have another [child] we have to take care of." Blackmon got angry after that statement and told Rainey to leave.
Also that day, August 17, 2014, Dr. Erik Mitchell, a forensic pathologist, performed an autopsy on Victim, finding various bruises on her body as well as fresh bruises on her head. A detective interviewed Rainey later that day and told her that Victim had injuries to her head, nose, mouth, lip, tongue, neck, and leg. Rainey told the detective that she did not know how any of the injuries occurred except for a bruise on Victim's left temple that happened when Victim and Rainey collided in the hallway, causing Victim to bump her head on a door frame.[5] Dr. Mitchell concluded that some of the injuries were not of the type that result from child's play, opining that the number and distribution of the injuries "indicate that something is happening to this child that is not just play." Dr. Mitchell found a blood clot under Victim's skull that was consistent with head trauma. He concluded that Victim's cause of death was head trauma and that the manner of death was homicide.
A few days after Victim's death, Rainey told Bernard that Victim died of "a blood clot in her brain" and that it was hereditary. At Victim's funeral, Bernard asked Rainey about visible bruises on Victim's head and cheekbones; Rainey again told Bernard that Victim died of a hereditary blood clot on the brain. At some point, Rainey told a police officer that "she believed a ghost may have harmed her baby."
After the completion of the investigation, Rainey was arrested at her mother's home in Nebraska and transported back to Missouri. Following her arrest, Rainey called Middlebrook from jail and told him to stay strong and that she loved him, and she further instructed him not to talk about the case because the police were trying to play them against each other.
Defense counsel moved for acquittal at the close of the State's evidence and again at the close of all evidence, but the trial court denied both motions.[6] The jury received the following relevant instructions:
[No. 5]
A person is responsible for her own conduct and she is also responsible for the conduct of another person in committing an offense if she acts with another person with the common purpose of committing that offense or if, for the purpose of committing that offense, she *921 aids or encourages the other person in committing it.
[No. 7]
If you do not find the defendant guilty of abuse of a child as submitted in Instruction No. 6, you must consider whether she is guilty of assault in the third degree under this instruction.
If you find and believe from the evidence beyond a reasonable doubt:
First, that on or about August 16, 2014, in the County of Buchanan, State of Missouri, the defendant or Patrick Middlebrook recklessly created a grave risk of death or serious physical injury to [Victim] by slamming, hitting or kicking [Victim],
then you are instructed that the offense of assault in the third degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
Second, that with the purpose of promoting or furthering the commission of that assault in the third degree, the defendant acted together with or aided Patrick Middlebrook in committing the offense, then you will find the defendant guilty of assault in the third degree.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
[No. 8]
A person acts "recklessly" as to causing serious physical injury if he consciously disregards a substantial and unjustifiable risk that his conduct will result in serious physical injury and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.
The jury found Rainey guilty of assault in the third degree under a theory of accomplice liability. Rainey filed a timely Motion for Judgment of Acquittal Notwithstanding the Verdict of the Jury or, in the Alternative, for a New Trial. At the sentencing hearing, the trial court granted Rainey's Motion for Judgment of Acquittal Notwithstanding the Verdict of the Jury and entered a judgment acquitting Rainey of assault in the third degree. The court reasoned:
All right. The Court is actually going to sustain the motion and I'll make that basis-I'll tell you why. It was apparent-in considering the defendant's motion and evidence presented at trial, it was apparent to the Court that the jury's questions during deliberation that they were struggling with the concept of accomplice liability in this case and holding the defendant responsible for the abuse of the child.
A separate jury found the defendant Patrick Middlebrook, guilty of abuse of a child [on] the evidence in that trial. And this defendant's trial supported that inference, that Patrick Middlebrook committed the acts of abuse resulting in the death of the child.
The issue for the jury in this case, in Ms. Rainey's case, was whether or not on August 16, 2014 did she act with Defendant Middlebrook with the common purpose of committing the offense of abuse of a child or did she aid or encourage Defendant Middlebrook in committing that offense.
And the jury answered the questions on the submitted case of abuse of a child by saying "No," that she was not guilty of that charge, and returned a verdict as *922 such.[7 ]
They then went on and considered a lesser-included offense, a submission of assault in the third degree, a misdemeanor offense, which the jury did find the defendant guilty.
However, that finding would require the same finding, either she acted together with Defendant Middlebrook with the common purpose of committing that offense or that she aided or encouraged him in committing that abuse of a child.[8 ]
In reviewing the evidence post-trial and in considering defendant's post-trial motion of a judgment of acquittal notwithstanding the jury's verdict, the Court reviewed the evidence extensively and the Court does not believe in hindsight that there was sufficient evidence to support the jury finding [Rainey] guilty-not only of abuse of a child, but also the lesser-included offense of assault in the third degree.
The evidence really came down to a-the speculation as to whether or not Rainey was lying with regards to her conduct on the date of the offense. I think the evidence pretty clearly indicated-the State's theory was that she had lied-she lived at the home with the child and Defendant Middlebrook, only her and Defendant Middlebrook had access to the child, and-but, however, the State's evidence also showed no evidence that she was present when the offense was committed.
The only logical inference-in fact, I think that was argued in the Middlebrook trial as well as this trial that she likely was not present during the time when the assault occurred. And I think that's what-the logical inference from the evidence presented was that she was not present. So it really came down to whether or not she was responsible for the offense.
And the State's theory that was argued at trial, which the Court considered at the time and questioned at the time, was the idea that perhaps she was lying with regards to her conduct and whether or not she was lying about when she returned to the home at-I believe it was 3:25-or 3:24 and left at 3:25 and then the 911 call came about 48 minutes later, I believe, maybe longer, that somehow she lied and that based on that lie that she should be found guilty as an accomplice.
However, in reviewing it I don't see any clear evidence that she was lying. It was-to me, it was essentially speculation as to whether or not she was lying about the events and what she observed *923 with Mr. Middlebrook's action on that date. And I don't believe that's sufficient evidence for the jury to make a finding of the defendant's guilt of the underlying offense of the misdemeanor finding of assault in the third degree.
And so the Court is granting the defendant's judgment or-judgment of acquittal notwithstanding the verdict of the jury. Okay?
As a result of its ruling on the motion for acquittal, the trial court did not address Rainey's alternative motion for new trial. This appeal follows.
Standard of Review
Where, as here, a trial court grants a motion for judgment of acquittal notwithstanding a jury's guilty verdict because the court believed the evidence to be insufficient to support the verdict, the issue on review "is whether ... the evidence, viewed in the light most favorable to the jury's verdict, was sufficient for reasonable persons to find the defendant guilty beyond a reasonable doubt with matters of credibility and inconsistencies in testimony being left to the jury's consideration." State v. Magalif , 131 S.W.3d 431, 434 (Mo. App. W.D. 2004). "This is not an assessment of whether the [appellate c]ourt believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." State v. Davidson , 521 S.W.3d 637, 642 (Mo. App. W.D. 2017) (quoting State v. Nash , 339 S.W.3d 500, 509 (Mo. banc 2011) ).
"In reviewing the sufficiency of the evidence, all evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence[, and a]ll evidence and inferences to the contrary are disregarded." Id. at 642-43 (quoting Nash , 339 S.W.3d at 509 ). "When reviewing the sufficiency of evidence supporting a criminal conviction, the [appellate c]ourt does not act as a 'super juror' with veto powers, but gives great deference to the trier of fact." Id. at 643 (quoting Nash , 339 S.W.3d at 509 ). The court "will not weigh the evidence anew since the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." Id. (quoting Nash , 339 S.W.3d at 509 ). However, the court "may not supply missing evidence, or give the [State] the benefit of unreasonable, speculative or forced inferences." State v. Clark , 490 S.W.3d 704, 707 (Mo. banc 2016) (quoting State v. Whalen , 49 S.W.3d 181, 184 (Mo. banc 2001) ).
Analysis
In its only point on appeal, the State argues that the record contained sufficient evidence for the jury to find Rainey guilty of third-degree assault on a theory of accomplice liability in that she or Middlebrook recklessly created a grave risk of death or serious physical injury to Victim by slamming, hitting, or kicking her. Section 565.070.1(4) states that "[a] person commits the crime of assault in the third degree if ... [t]he person recklessly engages in conduct which creates a grave risk of death or serious physical injury to another person[.]" "A person 'acts recklessly' ... when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4. Under accomplice liability, "[a] person is criminally responsible for the conduct of another when ... [e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, *924 he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." § 562.041.1(2).
To establish accomplice liability, the State must prove the defendant acted with the requisite mental state. Except in the case of murder in the first degree, "the only showing required as to the culpable mental state of an accomplice is that in aiding the principal in the commission of the offense, he acted with the purpose to promote the conduct of the principal that constituted the offense for which the accomplice is being held liable." State v. Smith , 229 S.W.3d 85, 95 (Mo. App. W.D. 2007). Here, this means that, to be sufficient, the evidence had to show that Rainey acted with a purpose of promoting Middlebrook's reckless conduct and not that she acted with the purpose to injure Victim.
"Missouri cases characterize conduct with the requisite mens rea -that is, the purpose to promote the conduct of the principal that constituted the crime-as 'affirmative participation.' " State v. Barker , 442 S.W.3d 165, 169 (Mo. App. W.D. 2014).
An accused's affirmative participation in an offense may be reasonably inferred from: his presence at the scene of the offense; his association with others involved before, during, and after the offense; his conduct before the offense; his conduct during the offense, including making no effort to assist the victims; and his conduct after the offense, including fleeing from the scene and failing to talk to the police relatively soon after the incident.
In re Interest of S.B.A. , 530 S.W.3d 615, 625 (Mo. App. E.D. 2017). "While none of the preceding factors alone is sufficient to uphold [a conviction], Missouri [c]ourts have considered the presence of multiple factors to be sufficient evidence of an accused's affirmative participation in an offense." Id.
"Any evidence, either direct or circumstantial, that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction." Barker , 442 S.W.3d at 169 (quoting State v. Smith , 108 S.W.3d 714, 719 (Mo. App. W.D. 2003) ). "The requirement of affirmative participation may be satisfied by inference and the evidence need not directly place the [defendant] in the act of committing the crime for which she is charged." Smith , 108 S.W.3d at 719.
"An attempt by a defendant to cover up his or her involvement is a factor that may, in conjunction with other evidence, support the inference of affirmative participation by an accomplice." Id. at 721. "A permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or accused's role therein." Id. (quoting State v. Hibbert , 14 S.W.3d 249, 253 (Mo. App. S.D. 2000) ).
In this case, both sides agree that the evidence does not support an inference that Rainey slammed, hit, or kicked Victim, causing her death. The disputed issue is whether the evidence supports an inference that Rainey, with the purpose of promoting or furthering the commission of assault in the third degree, acted together with or aided Middlebrook in committing the offense. The State identifies nine pieces of evidence supporting Rainey's guilt: (1) Rainey and Middlebrook were the only adults present with Victim the day she died; (2) Victim had multiple injuries, both old and new, on her body, including injuries that were not the result of normal child's play; (3) Rainey tried to explain away some of Victim's injuries when Rainey spoke with her father and Bernard before Victim died; (4) Rainey did not ask Middlebrook what had happened when he *925 called to tell her that Victim was not breathing; (5) Rainey told police that Blackmon would be mad at her about Victim's death; (6) Rainey told Blackmon not to worry because they had another child to raise; (7) Rainey told Bernard that Victim died of a hereditary blood clot ; (8) Rainey later told police that she believed a ghost might have harmed Victim; and (9) Rainey told Middlebrook not to talk about what happened so police would not be able to play them against one another.
To begin, there was evidence that Rainey was present at the scene both before and after the crime occurred.
[W]hile the mere presence of an accused at the scene of a crime will not sustain a conviction, presence may be considered along with other incriminating evidence to determine if the total circumstances raise a reasonable inference that the accused was a participant in the offense charged. Presence, companionship and conduct before and after the offense are also circumstances from which one's participation in the crime may be inferred.
State v. Connor , 651 S.W.2d 550, 554 (Mo. App. W.D. 1983) (emphasis in original). In addition to her presence at the scene, Rainey continued to associate herself with Middlebrook even after Victim's death as evidenced by her post-arrest call to him, during which she told him to stay strong, that she loved him, and that he should not talk about the case because the police were trying to play them against each other. From this evidence, the jury could have reasonably inferred that Rainey was attempting to cover for her own involvement in the offense.
Furthermore, the evidence showed that Rainey told officers that, though she sometimes left the children alone with Middlebrook, she tried to do so only when the children were sleeping so Middlebrook would not be overwhelmed, thereby suggesting her awareness that Middlebrook posed a risk of harm to the children if he became overwhelmed. Additionally, Victim had multiple injuries, both old and new, on her body, including injuries that were not the result of normal child's play, which supported an inference that either Middlebrook or Rainey caused some of Victim's older injuries. And, on the day Victim died, Rainey told both her father and Bernard that Victim was not feeling well and had a rash, which demonstrated that Rainey was aware of or concerned about Victim's existing injuries and yet failed to seek help for Victim, thereby deflecting attention away from her role in the injuries.
The evidence also showed a consciousness of guilt. Rainey did not ask Middlebrook what had happened when he called to tell her that Victim was not breathing. Rainey told police that Blackmon would be mad at her about Victim's death, and she told Blackmon not to worry because they had another child to raise. Rainey twice told Bernard that Victim died of a hereditary blood clot even though she knew otherwise, as the police had previously discussed the autopsy results with Rainey, and Rainey later told police that she believed a ghost might have harmed Victim. From this evidence, the jury could have reasonably inferred consciousness of guilt in that (1) Rainey did not have to ask Middlebrook what had happened to Victim because Rainey already knew; (2) Rainey feared that Blackmon would be "mad at her" because of her role in Victim's death; and (3) Rainey continued to offer alternative and implausible explanations of Victim's death to cover up her own involvement.
Viewing the evidence in the light most favorable to the jury's verdict and leaving matters of credibility to the jury's consideration, we hold that there was sufficient evidence for reasonable persons to find Rainey guilty of third-degree assault beyond a reasonable doubt on a theory of *926 accomplice liability. Considered together, Rainey's presence at the scene and association with Middlebrook both before and after the crime, her failure to seek help despite her awareness of Victim's injuries, and her statements about false or implausible alternative causes of Victim's injuries and death are all sufficient to support a reasonable inference that Rainey affirmatively participated in the third-degree assault of Victim.
In addition, Rainey testified at trial, allowing the jury to observe her and assess her credibility. There was evidence that she was dishonest about both the source of Victim's injuries and the cause of her death. On that basis, the jury apparently determined that Rainey was dishonest about either her participation in the crime or her discovery of Victim's death. As its verdict indicates, the jury chose to disregard Rainey's testimony that she did not know how Victim had received most of her injuries and that Rainey had checked on Victim before heading to Walmart at which time Victim appeared to be fine. Credibility is an issue for the jury, and this jury did not find Rainey's explanations credible. Given the evidence described above, combined with a credibility determination that Rainey's exculpatory testimony was untruthful, the evidence was sufficient to support the inference that Rainey was present at or near the time of Victim's assault, that Rainey failed to seek help for Victim despite her awareness that Victim had been injured, that Rainey made statements demonstrating a consciousness of guilt, that she continued to associate with Middlebrook after Victim was injured, and that Rainey encouraged him to remain silent so that they each could avoid criminal liability. Contrary to the trial court's conclusion, we hold that there was sufficient evidence to support the jury's determination of guilt. Point I is granted.
Conclusion
There was sufficient evidence for reasonable persons to find Rainey guilty of third-degree assault beyond a reasonable doubt on a theory of accomplice liability. We reverse the trial court's grant of Rainey's motion for judgment of acquittal and remand the case to the trial court for determination of the legal claims in Rainey's alternative motion for new trial.[9]
Thomas H. Newton, Presiding Judge, and Victor C. Howard, Judge, concur.

When reviewing a judgment of acquittal notwithstanding the verdict, we view the evidence in the light most favorable to the jury verdict, disregarding all contrary evidence and inferences. State v. Richardson , 22 S.W.3d 753, 755 (Mo. App. E.D. 2000).

All statutory citations are to the Revised Statutes of Missouri (2000), as updated through the 2013 Supplement.

"Purpura occurs when small blood vessels burst, causing blood to pool under the skin[,] ... creat [ing] purple spots on the skin that range in size from small dots to large patches." www.healthline.com/health/purpura (last viewed Feb. 16, 2018).

Lividity is pooling of the blood in the lowest part of the body, which occurs upon death. Rigor mortis is the stiffening of the body after death; it usually develops first in the jaw. Cyanosis is a bluish discoloration of the skin resulting from decreased circulation. None of the witnesses who testified at trial offered an opinion regarding time of death based on the presence of these conditions.

Rainey also reported that Victim had spots on her head that would come and go, and Rainey did not know what caused them.

During its case, the defense called Rainey and three other witnesses: Rainey's brother, her father, and a pathologist who reviewed Dr. Mitchell's autopsy report and testified that the cause of death was a subdural hematoma (blood under the skull) resulting from head trauma, but the manner of death was accidental.

The court's statement in this respect is legally inaccurate, as a jury's rejection of a greater offense in favor of a lesser-included offense does not constitute an acquittal, or a "not guilty" verdict, of the greater offense. "Missouri juries do not have to find a defendant 'not guilty' of the greater offense ... before considering the lesser included offense...." State v. Wise , 879 S.W.2d 494, 517 (Mo. banc 1994), overruled on other grounds by Joy v. Morrison , 254 S.W.3d 885 (Mo. banc 2008). "Instead, ... Missouri juries are allowed to consider the lesser included offense if they 'do not find the defendant guilty' of the greater offense." Id. (quoting MAI-CR 3d 313.04). "The difference in terminology carries meaning." Id. In Missouri, "a jury deadlocked on the greater offense has not found the defendant guilty on the greater charge, [and] thus can consider the lesser included offense." Id.

Although Middlebrook was convicted of abuse of a child, the verdict in his case did not preclude the possibility that Rainey could have been found guilty of the lesser-included offense of third-degree assault. It is no defense to prosecution for an offense based on accomplice liability that the other person has been convicted of a different offense. § 562.046(1).

Rainey's motion for a new trial was indirectly overruled by operation of law under Rule 29.11(g) of the Missouri Supreme Court Rules (2013). In that situation where weight of the evidence is involved, we remand because "[j]ustice is not complete unless the trial court is allowed to decide whether a new trial should be granted." State v. Richardson , 22 S.W.3d 753, 758 (Mo. App. E.D. 2000).