

# Missouri Court of Appeals

### Southern District

### Division Two

STATE OF MISSOURI, )
)
    Plaintiff-Appellant, )
)
v. ) No. SD36620
)
XAVIER M. RAY, ) **Filing: January 19, 2021**
)
    Defendant-Respondent. )

APPEAL FROM THE CIRCUIT COURT OF DUNKLIN COUNTY

Honorable Robert N. Mayer

**<u>AFFIRMED</u>**

The State appeals the trial court's judgment notwithstanding the verdict ("JNOV")

that set aside the jury's verdict that Xavier M. Ray ("Defendant") was guilty of attempted

burglary in the first degree and convicted Defendant instead of the lesser-included offense of

attempted trespass in the first-degree.[1]

In one point on appeal, the State claims the trial court erred in granting Defendant's

motion for JNOV because there was sufficient evidence from which a reasonable juror could

find beyond a reasonable doubt that Defendant committed attempted burglary in the first

degree. Finding no merit in that claim, we affirm the judgment of the trial court.

---

[1] We note at the outset that "[o]ur cases have made a single exception to the principle that acquittal by judge precludes reexamination of guilt no less than acquittal by jury: When a jury returns a verdict of guilty and a trial judge (or an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty." ***Smith v. Massachusetts***, 543 U.S. 462, 467 (2005).

1

In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light most favorable to the jury's verdict. ***State v. Rainey***, 545 S.W.3d 916, 923 (Mo. App. W.D. 2018). Viewed in accordance with that standard, the relevant evidence was as follows.

On March 6, 2019, Bobby Thornton ("Mr. Thornton") was at home watching television when he saw someone run around the side of his house. Mr. Thornton went to the back door and found Defendant on his doorstep, trying to yank the door open. Defendant said "please let me in, let me in this mother-f*er" and "[t]hey after me." Mr. Thornton told Defendant he could not do that because Defendant was "running from the law[.]" Mr. Thornton's girlfriend called the police, and Defendant ran off.

Defendant had failed to appear for a scheduled court date, and when he didn't show up, a warrant was issued for his arrest. That failure to appear was also a violation of Defendant's bond, and Randy Laxton ("Bondsman"), a licensed bail agent, was actively looking for Defendant.

On the day that Defendant approached Mr. Thornton's home, Bondsman was "set up" in the yard of a location where he had learned that Defendant might be staying. Bondsman's goal was to take Defendant into custody and transport him to the sheriff's office. The tip about Defendant's location was a good one. Bondsman saw Defendant, approached him, and yelled, "[Defendant's name,] bail bonds, get down on the ground[!]" Instead of complying, Defendant "took off running." Bondsman lost sight of Defendant, and he and his fellow bondsman had been searching for Defendant for about 30 minutes when they found him standing in the backyard of a house in Malden.

Bondsman told Defendant to stop and get down on the ground. Defendant ran again, this time into a wooded area behind the house. Bondsman and his partner gave chase. This time, they successfully apprehended Defendant and turned him over to an officer with the Malden Police Department, who placed Defendant under arrest and transported him to the police station.

The State's Information charged Defendant as follows:

> In violation of Section 569.160, RSMo,[2] [Defendant] committed the class C felony of attempted burglary in the first degree, . . . in that on or about March 6, 2019, . . . [Defendant] tried to gain entry to the inhabitable structure at 502 Gertie Street for the purpose of failing to appear and there was present in such inhabitable structure, [Mr.] Thornton, a person who was not a participant in the crime, and such conduct was a substantial step toward the commission of the offense of burglary in the first degree and was done for the purpose of committing such burglary.

The jury was instructed on attempted burglary in the first degree and the lesser-included offense of attempted trespass in the first degree. As earlier noted, the jury found Defendant guilty as charged of the greater offense.

After receiving the jury's verdict, the trial court granted Defendant's motion for JNOV, ruling that "the State failed to prove beyond a reasonable doubt that [Defendant] had a purpose of committing a crime therein or within the habitable structure." In accordance with that finding, the trial court set aside the jury's verdict. The trial court then entered an order finding Defendant guilty of the lesser-included offense of attempted trespass in the first-degree and sentenced Defendant to fifteen days in the county jail on that class-C misdemeanor.

> Where, as here, a trial court grants a motion for judgment of acquittal notwithstanding a jury's guilty verdict because the court believed the evidence to be insufficient to support the verdict, the issue on review "is whether ... the evidence, viewed in the light most favorable to the jury's

---

[2] Unless otherwise noted, all statutory references are to RSMo 2016.

verdict, was sufficient for reasonable persons to find the defendant guilty beyond a reasonable doubt with matters of credibility and inconsistencies in testimony being left to the jury's consideration." *State v. Magalif*, 131 S.W.3d 431, 434 (Mo. App. W.D. 2004). "This is not an assessment of whether the [appellate c]ourt believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." *State v. Davidson*, 521 S.W.3d 637, 642 (Mo. App. W.D. 2017) (quoting *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011)).

*Rainey*, 545 S.W.3d at 923.

As pertinent here, section 569.160 (emphasis added) provides:

1.      A person commits the offense of burglary in the first degree if he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing an offense *therein*, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, the person or another participant in the offense:

        . . . .

(3)     There is present in the structure another person who is not a participant in the crime.

Here, the crime the State accused Defendant of intending to commit inside Mr. Thornton's home was "fail[ure] to appear[,]" which is set forth as follows in section 544.665.1:

any person who, having been released upon a recognizance or bond pursuant to any other provisions of law while pending preliminary hearing, trial, sentencing, appeal, probation or parole revocation, or any other stage of a criminal matter against him or her, knowingly fails to appear before any court or judicial officer as required shall be guilty of the crime of failure to appear.[3]

---

[3] Under 562.012.1, "[g]uilt for an offense may be based upon an attempt to commit an offense if, with the purpose of committing the offense, a person performs any act which is a substantial step towards the commission of the offense."

4

The only disputed element of burglary at issue in this appeal is whether Defendant attempted to enter Mr. Thornton's residence for the purpose of committing the crime of failure to appear *therein*.

"In the context of failure to appear, the voluntary act is an act of omission (*i.e.*, failing to do something one is required to do), premised upon a court order to appear." **State v. Osborn**, 504 S.W.3d 865, 879 (Mo. App. W.D. 2016). Evidence is sufficient to support a conviction for failure to appear if the State demonstrates "that [Defendant] knew of the time and date of his required court appearance and that he did not appear[.]" **Id.** If **Osborn** correctly states that all of the elements of the crime of failure to appear are completed when a criminal defendant fails to appear in court on the date scheduled, then Defendant could not have completed that crime at a later date inside Mr. Thornton's home.

In an attempt to avoid that result, the State argues that "the nature of the offense of failure to appear makes it clear that this is a continuing offense, or one that is not complete until the accused's duty to appear in court is satisfied." In support of that claim, the State does not reference any language in section 544.665.1. Instead, it refers us to the following statute that determines when criminal statutes of limitation begin to run:

> An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct *plainly appears*, at the time when the course of conduct or the person's complicity therein is terminated. Time starts to run on the day after the offense is committed.

Section 556.036.4 (emphasis added).

If, for the sake of argument, the State is correct that failure to appear is a *continuing* offense that cannot be completed until the absconder actually returns to court, then no rational fact-finder could find, beyond a reasonable doubt, the

5

essential element of attempted burglary in the first degree that Defendant attempted to enter Mr. Thornton's residence "for the purpose of committing [the crime of failure to appear] *therein*[.]" *See* section 569.160.1 (emphasis added) and ***Rainey***, 545 S.W.3d at 923.[4]

The State's point is denied, and the judgment of the trial court is affirmed.

!!!!

DON E. BURRELL, J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

---

[4] We need not determine in this appeal whether failure to appear is a continuing offense. The State acknowledges that section 544.665 "does not expressly state that the offense [of failure to appear] was intended to" prohibit a continuing course of conduct. In light of that absence, the State suggests that the statute "nonetheless manifests a 'legislative purpose to prohibit a continuing course of conduct' due to the very nature of the offense it creates." We reject the contention that the "very nature" of failure to appear is sufficient to demonstrate a *clear* legislative purpose to prohibit a continuing course of conduct. And the State does not claim that Defendant could have intended to commit the crime of failure to appear within Mr. Thornton's residence if failure to appear is not a continuing offense.