

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE INTEREST OF: M.T.W. )
)
                Appellant, )
)
v. )          WD85020
)
JUVENILE OFFICER, )          Opinion filed:  February 28, 2023
)
                Respondent. )

**APPEAL FROM THE CIRCUIT COURT OF BUCHANAN COUNTY, MISSOURI**
**THE HONORABLE PATRICK K. ROBB, JUDGE**

Division Two:  Edward R. Ardini, Jr., Presiding Judge,
Lisa White Hardwick, Judge and Karen King Mitchell, Judge

M.T.W.[1] challenges the judgment of the Family Court Division of the Circuit Court of Buchanan County ("Juvenile Court") assuming jurisdiction and placing her on probation, arguing that there was insufficient evidence to support the Juvenile Court's finding that she committed the delinquency offense of making a terrorist threat in the third degree. We affirm.

## Factual and Procedural Background

On October 23, 2021, the juvenile officer for Buchanan County filed a petition alleging that M.T.W., who was fifteen years old, had committed the delinquency offense of making a

---

[1] We use initials to identify the juvenile in this case pursuant to section 211.321, RSMo.

Statutory references are to the Missouri Revised Statutes, updated through the 2021 supplement.

terrorist threat in the third degree, which would have been a class A misdemeanor if committed by an adult. The juvenile officer specifically alleged that M.T.W. acted in concert with another juvenile to commit the offense by helping the other juvenile to deactivate "his Snapchat account and creat[e] a new Snapchat account," and acting together with that juvenile to "communicate[ ] an express or implied threat to cause an incident or condition involving danger to life by using the new Snapchat account to send a message threatening to shoot up Lafayette High School, and in doing so, [M.T.W.] acted with criminal negligence with regard to the risk of causing the evacuation, quarantine or closure of Lafayette High School."

On November 19, 2021, the parties appeared for an adjudication hearing. The evidence, in the light most favorable to the Juvenile Court's judgment, established the following:

On the morning of October 22, 2021, a post was sent out over Snapchat threatening a shooting at Lafayette High School in St. Joseph, Missouri. Multiple students and staff members reported the post, and many students left the school in fear. Officers investigated the threat and linked the Snapchat account from which the threatening post was made to a student at the school who implicated M.T.W. in the incident.

Officers questioned M.T.W. at her home after obtaining consent from her mother. M.T.W. stated that "she was in a class with the other [student] that was involved in this and then a third kid, that they wanted to make this threat but they didn't know how to deactivate their Snapchat. She said that she showed them how to deactivate their Snapchat and create another one." M.T.W. also admitted that she took a screenshot of the threat and sent it to her friends.

M.T.W. testified on her own behalf and, although she acknowledged that she showed her classmate how to deactivate his Snapchat account and create a new one, she claimed that she was unaware that the purpose of creating the new account was to communicate a threat. M.T.W. also

2

testified that she and some friends attempted to report the threat to an administrator at the school, but was informed that the principal was already aware of the incident. M.T.W. acknowledged that she did not tell the administrator the name of the student who had sent the threat claiming that, at that point, she did not know who was behind it.

The Juvenile Court found that the allegations in the petition were true beyond a reasonable doubt. The Juvenile Court specifically credited certain law enforcement testimony and found M.T.W.'s testimony lacked credibility.

On December 1, 2021, the dispositional hearing was held. The Juvenile Court entered a judgment placing M.T.W. on probation. M.T.W. appeals.

## Standard of Review

"'Juvenile proceedings are reviewed in the same manner as other court-tried cases.'" *T.R.T. v. Juv. Off.*, 641 S.W.3d 263, 267 (Mo. App. W.D. 2021) (quoting *D.C.M. v. Pemiscot Cty. Juv. Off.*, 578 S.W.3d 776, 786 (Mo. banc 2019)) (additional citation and quotation omitted). Thus, we will "'affirm a judgment in a juvenile proceeding unless it is not supported by evidence, is against the weight of evidence, or erroneously declares or applies the law.'" *Id*. (quoting *D.C.M.*, 578 S.W.3d at 786) (additional citation omitted). "'The credibility of the witnesses and the weight their testimony should be given is a matter to be determined at the hearing by the circuit court, which is free to believe none, part, or all of their testimony.'" *I.D. v. Juv. Off.*, 611 S.W.3d 869, 874 (Mo. App. W.D. 2020) (quoting *D.C.M.*, 578 S.W.3d at 786).

## Discussion

M.T.W. raises one point on appeal, alleging that the Juvenile Court erred in finding that she committed the delinquency offense of making a terrorist threat, arguing that there was insufficient evidence that she possessed the requisite *mens rea*.

3

"In reviewing a challenge to the sufficiency of the evidence to support a juvenile adjudication, our Court's role is to determine whether the juvenile officer has introduced sufficient evidence from which a reasonable person could have concluded the accused committed the delinquent act that would have constituted a violation of a criminal statute if it was committed by an adult." *In Int. of S.B.A.*, 530 S.W.3d 615, 623 (Mo. App. E.D. 2017). The juvenile officer "has the burden of proving each element of the criminal offense beyond a reasonable doubt[.]" *Id.* (citation omitted). "[W]e view the evidence and reasonable inferences therefrom in the light most favorable to the trial court's judgment, and we disregard all contrary evidence and inferences." *Id.* (citation omitted). "However, we will not supply missing evidence or give the state the benefit of unreasonable, speculative, or forced inferences." *Int. of D.E.W.*, 617 S.W.3d 514, 520 (Mo. App. E.D. 2021) (citing *J.N.C.B. v. Juv. Off.*, 403 S.W.3d 120, 124 (Mo. App. W.D. 2013)).

M.T.W. was found to have committed the offense of making a terrorist threat in the third degree under an accomplice-liability theory. "A person commits the offense of making a terrorist threat in the third degree if he or she, with criminal negligence with regard to the risk of causing the evacuation, quarantine or closure of any portion of a building, inhabitable structure, place of assembly or facility of transportation, knowingly . . . [c]ommunicates an express or implied threat to cause an incident or condition involving danger to life[.]" § 574.125.1(1), RSMo. "A person is criminally responsible for the conduct of another when[ . . . e]ither before or during the commission of an offense with the purpose of promoting the commission of an offense, he or she aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense." § 562.041.1(2), RSMo.

M.T.W. admits that she helped her classmate create the Snapchat account that was used to communicate the threat, but claims that there was insufficient evidence to support a finding that

4

she acted "with the purpose" of promoting the offense, arguing that the evidence failed to establish that she was aware that the classmate intended to use the Snapchat account to send a threat until after she had shown him how to create it.

"A person 'acts purposely,' or with purpose, with respect to his or her conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that result." § 562.016.2, RSMo. "Missouri cases characterize conduct coupled with the requisite *mens rea*— that is, the purpose to promote the principal's commission of a crime—as 'affirmative participation." *State v. Barker*, 442 S.W.3d 165, 169 (Mo. App. W.D. 2014) (citing *State v. Clay*, 975 S.W.2d 121, 139 (Mo. banc 1998)). "'Any evidence, either direct or circumstantial, that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction.'" *Id*. (quoting *State v. Smith*, 108 S.W.3d 714, 715 (Mo. App. W.D. 2003)). "'Affirmative participation may be proven by inference.'" *Id*. (quoting *State v. Williams*, 409 S.W.3d 460, 468 (Mo. App. W.D. 2013)). "'Circumstances that *may* support the inference of an accomplice's affirmative participation include presence at the crime scene; flight therefrom; association or companionship with others involved before, during, and after the crime; conduct before and after the offense; knowledge; motive; and a defendant's attempt to cover up [her] involvement.'" *Id*. (quoting *Smith*, 108 S.W.3d at 719).

Here, the evidence in the light most favorable to the Juvenile Court's judgment was sufficient to infer that M.T.W.'s action in assisting her classmate to deactivate his Snapchat account and create a new one was done with the purpose of assisting that classmate in disseminating the threat. Two police officers testified that M.T.W. stated that she helped her classmate create the new Snapchat account *after* she overheard him speaking with another student about making the threat. Specifically, one officer testified that it was his impression that "she knew

what [her classmate was] doing and helped [him] create the [account] because she had heard [him] talking about it, the threat." A different officer testified that M.T.W. had indicated "that she was in a class with the other gentleman that was involved in this and then a third kid, that they wanted to make this threat but they didn't know how to deactivate their Snapchat. She said that she showed them how to deactivate their Snapchat and create another one." This evidence was sufficient to establish that M.T.W. was aware that the other students intended to use the Snapchat account to disseminate the threat prior to providing her assistance. Moreover, M.T.W.'s purpose in facilitating the commission of the offense was further revealed by her subsequent conduct. For example, M.T.W. failed to report that her classmates had discussed making a threat directed at the school either before the threat had been posted or later when she reported the posting to a school administrator. Indeed, even at the adjudication hearing, M.T.W. persisted in her claim that she did not know who had posted the threat on Snapchat despite being present when two of her classmates discussed the plan to post such a threat, helping her classmate create a Snapchat account that was used to communicate the threat, and having seen the threat posted on Snapchat and sharing it with her friends.[2]

Thus, viewing the evidence in the light most favorable to the Juvenile Court's judgment, there was sufficient evidence to find that M.T.W. committed the delinquency offense of making a terrorist threat in the third degree under a theory of accomplice liability.

Point denied.

---

[2] M.T.W. directs us to certain testimony that, she asserts, presented a more favorable timeline to her theory that she only became aware of her classmates plan to post the threat after she had provided her assistance in setting up the new Snapchat account. She further argues that had it been her purpose to facilitate the making of the threat, she would not have attempted to report the threat to school administrators. This approach put forth by M.T.W. ignores our standard of review, which mandates that we disregard inferences contrary to the Juvenile Court's judgment and defer to the Juvenile Court as to the credibility of witnesses. *See D.C.M.*, 578 S.W.3d at 786.

**Conclusion**

The judgment of the Circuit Court of Buchanan County is affirmed.

_____
EDWARD R. ARDINI, JR., JUDGE

All concur.